

**SO ORDERED.**

**SIGNED this 20 day of June, 2008.**

_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

**LOUISE TRACEY SYDMARK,**

          **DEBTOR.**

**CASE NO.  06-41218**
**CHAPTER 7**

In re:

**ANNETTE BLACK-WATKINS**

          **DEBTOR.**

**CASE NO.  05-42539**
**CHAPTER 7**

**MEMORANDUM OPINION AND ORDER ON CHAPTER 7 TRUSTEE'S MOTIONS**
**FOR TURNOVER OF ESTATE PORTION OF TAX REFUNDS AND OTHER**
**PROPERTY, AND FOR REJECTION OF ATTORNEY FEE CONTRACTS**

These parallel cases constitute a further chapter in the ongoing pursuit by debtors'

attorneys to find some method to guarantee they will be paid for post-petition work done

exclusively for their debtor client's benefit, post *Lamie v. United States*[1] and *Redmond v. Lentz & Clark, P.A. (In re Wagers).*[2]  The issue presented in these cases is whether a Chapter 7 trustee may recover the estate's interest in income tax refunds received post-petition even when the debtor's counsel has perfected a security interest in those refunds for payment of post-petition legal fees for work performed in connection with the bankruptcy.  The Court has jurisdiction[3] over this matter, and is prepared to rule based on the parties' Stipulation of Facts and briefs.  For the reasons stated below, the Court holds that the estates are entitled to turnover of the amount of the estates' interests in the refunds, after deduction from the estate's interest in the refunds of counsel's secured claims for reasonable fees for work performed in conformity with the *Lamie* retainer exception for services to ensure the bankruptcy filing is in order.

## I.  FINDINGS OF FACT

Both Debtors are represented by the same attorney, and the same Chapter 7 trustee was appointed in each case.  The parties filed joint Stipulations of Facts, and Debtors' counsel also filed an affidavit in each case,[4] to which the Trustee has objected, claiming the contents of those affidavits improperly augment the stipulated facts to which both parties consented.  The affidavits differ from the stipulation only insofar as Debtors' counsel claims the agreements and

---

[1]540 U.S. 526 (2004).

[2]514 F.3d 1021 (10th Cir. 2007).

[3]This  Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  This is a core proceeding that this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(1) and (b)(2)(E). There is no objection to venue or jurisdiction over the parties.

[4]Case 06-41218, Doc 58 (*Sydmark*) and Case 05-42539 at Doc. 117 (*Black-Watkins*).

Case 06-41218    Doc# 62    Filed 06/20/08    Page 2 of 31

assignments were intended to be a contemporaneous exchange for new value conducted in the ordinary course, discloses that counsel had to defend an adversary proceeding in the *Sydmark* case, notes that the total post-petition fees have not yet been calculated because of the ongoing work associated with the issues raised here, and claims most of his clients are unable to pay for necessary post-petition work, necessitating this type of fee structure. The Court has not considered the affidavits, to the extent they contain facts extraneous to the parties' stipulation, because the additional information was not required for a determination of the underlying issues.

### Sydmark

On November 14, 2006, Debtor Louise Sydmark entered into a contract for bankruptcy services with Dan McCulley.[5] She agreed to pay a flat fee of $1355 for pre-petition fees and expenses. This fee included the following services: analyzing the client's financial position; rendering advice whether to file bankruptcy; preparation and filing of any petitions, schedules and statements of affairs; representation at the first meeting of creditors and confirmation hearings;[6] preparation and filing of uncontested judicial or other lien avoidances; advising the client as to documents requested by the Trustee; reminding creditors that the automatic stay is in place; and informing the client of any requests for stay relief and other claims or actions, including adversary proceedings and contested matters. Debtor paid $600 of the agreed fee before she filed her bankruptcy petition, leaving a balance due of $755.

---

[5]The contract in each of these cases is actually between Debtor and the law firm of Hornbaker, Altenhofen, McCulley & Alt, Chartered, counsel's former law firm. It has been assigned to Dan McCulley and Konza Law, LLC.

[6]The Court assumes this is a generic form, since there would not be confirmation hearings in a Chapter 7 proceeding.

Case 06-41218   Doc# 62   Filed 06/20/08   Page 3 of 31

The contract also provided for counsel to provide contingent legal services, upon further agreement, for post-petition work that might become necessary, at a rate of $150 per hour. Such potential services included: representation in adversary proceedings and contested matters; negotiating values with creditors; preparation of motions and orders for redemption; evaluation and approval of reaffirmation agreements; representation in conversion of the case to another chapter; representation outside of bankruptcy court; commencement of proceedings based upon post-petition violations of the automatic stay; and challenges, court appearances, or additional correspondence regarding judicial or other lien avoidance.

Either party to this contract could have opted not to perform that part of the contract dealing with most of the described post-petition work. Debtor could have opted to not use counsel for post-petition work, and the agreement specifically allows counsel to withdraw "at any time after reasonable notice to Client," and that the representation was subject to "further agreement."

The contract signed by Debtor Sydmark included a security agreement whereby she granted her attorney a security interest in "all assets, including but not limited to the following: [a]ll Federal and State Income Tax Refunds to which the client is currently entitled or becomes entitled to in the future until all fees due under this agreement are paid in full . . . ." On November 16, 2006, Debtor's counsel filed a UCC-1 with the Kansas Secretary of State naming himself as the secured party, the client as the debtor, and describing the collateral as "All assets including but not limited to all Federal & State Tax Refunds debtor is currently entitled to or may become entitled to in the future; all general intangibles; ... ." The contract, the assignment, and the UCC-1 were intended to be for payment of a debt for legal services rendered and to be

4

rendered in the bankruptcy proceedings. Although the Trustee does not expressly stipulate that counsel holds a perfected security interest in the refunds, his brief implies the security interest is properly perfected. The Court will, therefore, assume the security interest was properly perfected.

On November 26, 2006, Debtor Sydmark filed her Chapter 7 bankruptcy petition, attaching a copy of the contract pursuant to 11 U.S.C. § 329[7] and Bankruptcy Rule 2016[8] and a copy of the filed UCC-1.[9] Robert Baer was appointed Chapter 7 Trustee. The parties stipulate that McCulley was never appointed by the Trustee as counsel, pursuant to § 327, and that he is not seeking compensation under § 330, because counsel was not appointed by the Trustee, and also because none of the services provided would likely meet the statutory requirement that they be "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case."

When Debtor ultimately filed her 2006 tax returns, which were not due until after her bankruptcy filing, she became entitled to a federal refund of $4,947 and a state refund of $1,173, totaling $6,120. Debtor received and properly turned over those refunds to her attorney pending resolution of this dispute. With the Trustee's consent, McCulley paid his law firm the remaining $755 balance owed for the flat fee pre-petition services, and is holding the remaining $5,365 in

---

[7]The *Black-Watkins* case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective, but *Sydmark* was filed after that date. Because the BAPCPA amendments do not impact the Court's holding, and for the sake of simplicity, all statutory references to the Bankruptcy Code are to BAPCPA, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

[8]Case 06-41218 at Doc. 3 (*Sydmark*).

[9]*Id.* at Doc. 4.

5

his trust account. The Trustee has judiciously exercised his discretion not to challenge counsel's receipt of all the agreed flat fee, even though a few of the tasks in that fee were necessarily performed post-petition, such as attending the § 341 meeting and obtaining information requested by the Trustee.[10]

The Trustee filed a Motion for Turnover of that $5,365, which he alleged constituted the estate's portion of the 2006 tax refunds, as well as an additional $754.28, the amount contained in Debtor's bank accounts on the date of filing.[11] On the same date, the Trustee also filed a Motion to Reject Executory Contract, alleging that the agreement to provide legal service "purports to grant a security interest in non-exempt property of the estate and, therefore, is not in the interest of the estate, is detrimental to the estate and should be rejected."[12]

Meanwhile, creditor GE Money Bank filed an adversary proceeding to determine the dischargeability of its claim against Sydmark; that action required her attorney to provide post-

---

[10]The Court notes that it requires counsel to attend that first meeting, and in fact has granted motions filed by the United States Trustee in other cases, under 11 U.S.C. § 329, requiring disgorgement of part of the agreed attorney fee for counsel's failure to attend that first meeting. *See also Lamie v. U.S. Trustee*, 540 U.S. at 537-38 (holding that its "interpretation accords with common practice" because § 330(a)(1) does not prevent a debtor from engaging counsel and paying reasonable compensation "in advance to ensure that the filing is in order."). Attending the § 341 meeting fits within the description of services required to ensure that the filing is in order, since that meeting permits the Trustee to ask questions about assets or filing discrepancies. Similarly, if retained counsel gathers and mails information requested by the Trustee after the § 341 meeting, that is also technically work done post-petition. The Trustee here clearly understands that, hired or not, a debtor's counsel's performance of such post-petition work is necessary for the administration of the estate. Accordingly, as a practical matter, and to save the costs associated with filing a motion to hire counsel under § 327 to do that de minimis post-petition work that everyone understands must be done, and can be done more efficiently by the debtor's counsel, the Trustee has simply elected not to argue that such services are, technically, performed post-petition. The Court fully supports (and encourages adoption by trustees) of this practical approach. The security interest also appears to fully cover such services.

[11]Case 06-41218 at Doc. 27 (*Sydmark*).

[12]*Id.* at Doc. 29.

6

petition services not covered by the flat fee agreement.[13]  No one suggests those services provided any benefit to the estate or its administration, or that counsel was retained by the Trustee to perform that work.  Similarly, Debtor's attorney has resisted the turnover of money contained in Debtor's bank account, expending time and money to do so, and requiring the Trustee to do the same; again, that work not only does not benefit the estate, but directly harms the estate because the position taken, as discussed below, required the Trustee to file a motion and include argument and case law support in a brief on an issue this Court has already decided.

Although the parties stipulate that the amount, nature, and extent of all post-petition legal services is subject to later determination, the parties also agree that Debtor's attorney did in fact provide services for which compensation is due from someone.  Only the source of that payment is in dispute: should the funds come from what would otherwise be the estate's portion of the tax refunds, or should the funds come exclusively from property belonging to Debtor, either from the post-petition portion of the 2006 refunds, from future post-petition refunds[14] or other assets belonging to Debtor.

## Black-Watkins

The facts concerning Debtor Black-Watkins are similar, but not identical.  She entered into a contract for bankruptcy services with the same attorney on August 9, 2005, although that contract is considerably shorter than the one in *Sydmark*.  In that contract, she agreed to pay a

---

[13]Adversary Proceeding 07-7014.  The result of this proceeding was the entry of a stipulated $5,000 non-dischargeable judgment to this creditor.  *See* Doc. 18.

[14]The fee agreement between counsel and Sydmark shows that counsel also took an assignment of all future tax refunds to which Debtor might later become entitled.  It is unknown whether Debtor became entitled to refunds in 2007.  Tax refunds for post-petition tax years are assets that the Trustee obviously cannot attempt to claim for the estate, but which Debtor's counsel may claim for repayment of fees for post-petition work.

7

flat fee of $1232 for the following services: attorneys fees in an uncontested case through basic administration, attending the § 341 meeting and confirmation hearing, uncontested lien avoidance and reaffirmation, the bankruptcy filing fee, the UCC-1 filing fee, and the cost of a credit report. Debtor paid $500 of that retainer before filing, leaving a balance due of $732, which remains unpaid.

The contract also provided for potential additional services, to be provided at an hourly rate of $150, for "contested matters, motions to compel or other delays caused by debtor, dischargeability actions, judicial lien avoidances, stay relief actions, and any potential adversary proceedings." Debtor also signed a separate document that stated, in part: "ANNETTE YVONNE BLACK-WATKINS hereby assigns any and all income tax refunds to which debtor may be entitled for tax years 2005 <u>and before</u> to Dan M. McCulley . . . to secure payment of attorneys fees in the handling of this bankruptcy, any matters beyond basic administration of the case . . .." (emphasis added)

Shortly before filing her bankruptcy petition on August 10, 2005, counsel filed a UCC-1 in the Office of the Secretary of State of Kansas identifying Annette Yvonne Black-Watkins as debtor, Dan M. McCulley as secured party, and describing the collateral as "All 2005 Federal and State Income Tax Refund proceeds to secure attorney fees." The contract, assignment, and UCC-1 were intended to be for payment of a debt for legal services rendered and to be rendered in the bankruptcy proceeding. Again, the Trustee does not dispute that counsel has a perfected security interest in the refunds.

8

Along with her Chapter 7 petition, Debtor also filed the Assignment of Tax Refunds[15] and a disclosure statement pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016.[16] Robert Baer is also the appointed Chapter 7 Trustee in this case. As with the *Sydmark* case, these parties also agree that Debtor's counsel was not appointed pursuant to § 327, and is not seeking compensation under § 330.

Debtor became entitled to receive a 2005 federal refund of $5,319 and state refund of $863, for a total of $6,182. Of this amount, Debtor has only turned over $1,400 to her counsel, apparently having spent the rest. The entire $1,400 is held in her attorney's trust account.

On October 27, 2005, the Trustee filed both a motion for turnover of various items of estate property, including the 2005 tax refunds when received,[17] as well as a Motion to Reject Executory Fee Contract.[18] Although the amount, nature, and extent of the post-petition legal services is subject to later determination, the parties stipulate that Debtor's attorney did in fact provide services at $150 per hour for which compensation is due. Only the source of that payment is in dispute.

## II. ANALYSIS AND CONCLUSIONS OF LAW

### A. Controlling Precedent

---

[15]Case 05-42539 at Doc. 2 (*Black-Watkins*).

[16]*Id.* at Doc 1.

[17]*Id.* at Doc. 28.

[18]*Id.* at Doc. 26.

9

A taxpayer is generally entitled to the refund of any overpayments of income tax for the applicable tax year.[19]  Overpayments result when the sum of any "refundable" tax credits, such as repayments, wage withholding and earned income credit ("EIC"), exceed the tax imposed under the Internal Revenue Code for that year.[20]  Unless a debtor makes a "short year election", the taxable year of a Chapter 7 debtor is determined without regard to the bankruptcy filing.[21]

Controlling precedent exists in the Tenth Circuit on the issue of the estate's interest in tax refunds.  In *Barowsky v. Serelson (In re Barowsky),*[22] the Circuit held that a tax refund attributable to the pre-petition portion of the tax year in which the bankruptcy petition is filed is property of the estate under § 541.  Accordingly, in Debtor Sydmark's case, since she filed her petition on the 317th day of the year, the estate is entitled to 316/365 (86.6 %) of the refund. The remainder is not property of the estate, and Debtor is entitled to the portion of the refund attributable to the post-petition portion of the tax year, or 49/365 (13.4%).  Debtor Black-Watkins filed her case on the 222nd  day of the year, so the estate is entitled to 221/365 (60.5 %) of the refund and Debtor to 144/365 (39.5%) of the refund.[23]

Controlling precedent also governs the payment of a debtor's attorneys fees for post-petition services from estate property—at least when the refunds are not subject to a perfected

---

[19]26 U.S.C. § 6402(a) ("In the case of any overpayment, the Secretary ... shall ... refund any balance to [the taxpayer].")

[20]26 U.S.C. § 6401.

[21]26 U.S.C. § 1398(a) and (d).

[22]946 F.2d 1516 (10th Cir. 1991).

[23]This pro-rata distribution assumes a steady withholding from income throughout the tax year.  *See, e.g., In re Christie*, 233 B.R. 110, 112-13 (10th Cir. BAP 1999) (holding entire tax refund should instead be awarded to debtors because source of estimated tax payment generating refunds was post-petition earnings).

10

security interest. The United States Supreme Court held in *Lamie v. United States*[24] that § 330(a) does not authorize attorney compensation from estate property unless such counsel is employed by the estate, as authorized by § 327. The Tenth Circuit relied upon *Lamie* in deciding *Wagers,*[25] holding that a debtor's assignment of all right, title, and interest in future tax refunds did not divest the estate of its interest in the refunds, reversing the Bankruptcy Court that had held that such refunds never became property of the estate. The Circuit ultimately held that the assigned refunds could not be used to pay attorney fees for post-petition services, because § 330(a) , not § 329, governed fees for post-petition work done by a debtor's counsel who is not employed by the trustee under § 327.

The facts of *Wagers* are instructive. Wagers, immediately before filing a petition under Chapter 7 in October 2003, executed an assignment of tax refunds for tax years 2003 and earlier as a retainer for payment of any post-petition attorney fees that might be generated. Debtors ultimately received refunds exceeding $50,000 and turned those refunds over to their counsel to hold in his law firm's trust account during the litigation over the refunds. Based on *Lamie*, the Trustee objected to debtors' use of the refunds to pay post-petition fees and sought turnover of the estate's share of those refunds. The Bankruptcy Court denied the Trustee's motion, finding that the assignment constituted a complete assignment of all of the debtors' right, title, and interest in the refunds, and thus the refunds belonged to the law firm and not to the debtors or the bankruptcy estate.[26]

---

[24]540 U.S. 526 (2004).

[25]*In re Wagers*, 514 F.3d 1021 (10th Cir. 2007).

[26]*In re Wagers*, 340 B.R. 391 (Bankr. D. Kan. 2006).

11

The Tenth Circuit Bankruptcy Appellate Panel reversed,[27] and the Tenth Circuit affirmed the BAP's decision.[28]  Those courts reasoned that the refunds were property of the estate, notwithstanding the assignment.  They relied upon the rule that the Kansas Supreme Court had made applicable in Kansas disciplinary cases that because a "retainer paid as an advancement for future services is not earned by the attorney until the services have been performed,"[29] such payments remain the client's money until earned and must be placed in a trust account.

As a result, the appellate courts held the assignment did not divest the debtors of their interest in the tax refunds, and the refunds constituted property of the estate.  Because the refunds were property of the estate, and because the law firm was not retained on behalf of the estate pursuant to § 327, the appellate courts found that *Lamie* dictated the outcome.  They ultimately held that the law firm could not use the estate's portion of the refunds to pay its post-petition fees.

The *Lamie* decision, however, has been interpreted to contain a "retainer exception" to the prohibition against using estate funds to pay counsel not employed under § 327.  *Lamie,* which involved payment of fees for Chapter 7 representation after the debtor had converted from a Chapter 11 case, includes the following statement that is noted as the source of this retainer exception:

> It appears to be routine for debtors to pay reasonable fees for legal services before filing for bankruptcy to ensure compliance with statutory requirements. ...  So our

---

[27]*In re Wagers*, 355 B.R. 268 (10th Cir. BAP 2006).

[28]*In re Wagers*, 514 F.3d at 1021.

[29]*Id.* at 1028, *citing In Re Scimeca*, 265 Kan. 742, 760, 962 P.2d 1080, 1091 (1998) (holding "If . . .  the retainer is to be earned by future services performed by the attorney, then it remains the client's money and subject to MRPC 1.15.").

12

interpretation accords with common practice.  Section 330(a)(1) does not prevent a debtor from engaging counsel before a Chapter 7 conversion and paying reasonable compensation in advance <u>to ensure that the filing is in order</u>.  Indeed the Code anticipates these arrangements.  *See, e.g.*, § 329 (debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and court may order excessive payments returned to the estate). [30]

When the Tenth Circuit, in deciding *Wagers*,[31] considered the *Lamie* retainer exception, it relied on *Morse v. Ropes & Gray, LLP (In re CK Liquidation Corp.*),[32] which had held this exception applied to flat fee retainers, but not to security retainers.  *CK Liquidation* defined a flat fee retainer as  "an unqualified prepayment for services whereby counsel takes title to the retainer on the date of payment;" and it defined a security retainer to be a retainer "held by counsel but remains property of the client until it is earned by counsel's performance."[33]  Both the BAP and the Tenth Circuit implicitly found that the Wagers' assignment was a security retainer under the *CK Liquidation* definition.[34]

Under the terms of the fee agreements in both the *Sydmark* and *Black-Watkins* cases, the assignments of tax refunds are expressly intended both to secure payment of the balance due on the flat fee agreement for basic bankruptcy services as well as to secure payment of post-petition services at an agreed hourly rate should those services be required.  The Trustee does not contest Debtors' use of a portion of the estate's share of their respective tax refunds to retire the balance

---

[30]*Lamie*, 540 U.S. at 537-38 (emphasis added).

[31]*In re Wagers*, 514 F.3d at 1029.

[32]343 B.R. 376, 383-84 (D. Mass. 2006).

[33]*Id.* at 379 n.3.

[34]*In re Wagers*, 514 F.3d at 1029-30.

13

due under each flat fee agreement for basic services—$755 in *Sydmark*[35] and $732 in *Black-Watkins*.[36] The dispute in these cases is thus limited to whether Debtors, or their respective bankruptcy estates, must pay for the post-petition legal services that were not a part of the basic bankruptcy services included in the negotiated flat fee.

### B. The Parties' Positions

The Trustee argues that the decision in *Wagers* controls because it unequivocally determined that assignments to secure payment of post-petition services do not remove the refunds from the estates, and thus turnover must be ordered. The Trustee argues, alternatively, that the contracts are executory to the extent they provide for post-petition services, and that the contracts have either been deemed rejected pursuant to § 365(d)(1) or the Court should approve rejection under the business judgment rule applicable to rejection under § 365(a).

In response, Debtors argue both that *Wagers* was incorrectly decided by both the BAP and the Tenth Circuit, and that *Lamie* is distinguishable because the attorney in that case did not have a perfected pre-petition security interest in specific funds.[37] Debtors request this Court follow the Bankruptcy Court decision in *Wagers*, even though it was reversed by the BAP and ultimately the Tenth Circuit. In particular, Debtors argue that the fee agreements are controlled by § 329, to the exclusion of § 365.[38] Debtors also argue that § 365(d)(1) does not apply to fee

---

[35]Case 06-41218 Doc. 57 (*Sydmark*).

[36]Case 05-42539 at Doc. 117 (*Black-Watkins*).

[37]Case 06-41218 at Doc. 59, pp. 10- 15 (*Sydmark*).

[38]*Id.* at Doc. 59, p. 8. Debtors would resurrect the following statement of the Bankruptcy Court in *Wagers*:
    "....in the context of enforcing a prepetition retainer agreement, the reasonable fee limitation of § 329 addresses the same concerns as do § 365, the executory contract section, and § 548,

14

contracts, that §365(c)(2) and/or §365(e)(2)(B) bar rejection, and that public policy should preclude rejection.

Debtors further argue they should not be ordered to return the estate's portion of the refunds to the estate because the refunds are subject to counsel's perfected security interest. Alternatively, they argue that if turnover is appropriate, the estates' interests should be calculated by first deducting the balance due under the flat fee agreements before allocating the tax refunds between the estates and Debtors under the *Barowsky* formula, relying on *In re Miller*.[39]

The Trustee states he will not oppose an order "consistent with local practice" that the balances due under the flat fee portion of the contracts be deducted from the refunds before the allocation of the amounts attributable to the pre- and post-petition periods.[40]

---

the fraudulent transfer section . . . . If the issue were presented, this Court would likely hold that the reasonableness standard of § 329 controls the propriety of paying Chapter 7 debtors' attorney postpetition fees from a prepetition retainer, to the exclusion of § 365 and § 548." *In re Wagers*, 340 B.R. at 408-09.

[39]Case 05-25745 (D. Kan. Dec. 11, 2006), aff'd 378 B.R. 418 (10th Cir. BAP 2007) (unpublished decision) (holding that attorney's "flat fee" for basic bankruptcy services did not need to be paid from the debtor's post-petition portion of the refund but could instead be first deducted from the entire refund, with the remainder of the refund, $2186, allocated between the estate and the debtor based upon the *Barowsky* formula). *See also Redmond v. Carson (In re Carson)*, 374 B.R. 247 (10th Cir. BAP 2007) (holding the same as *Miller*). In *Miller* and *Carson*, as in each of these cases, tax refunds to be received post-petition were assigned to pay a flat attorney fee under an agreement for basic bankruptcy services. Both the BAP and Bankruptcy Court, in both *Miller* and *Carson*, found that use of tax refunds to pay the flat fee was not contrary to *Lamie*, citing *In re CK Liquidation*, 343 B.R. 376, 383 (D. Mass. 2006) for the proposition that the retainer exception applies to flat fee retainers. They characterized the assignment of the tax refunds to pay the flat fee for basic bankruptcy representation as a flat fee retainer, even though it called for services to be provided both before and after filing of the petition. This Court assumes that holding is based on the same practicalities referenced in n.10, above.

[40]Case 05-42539 at Doc.119, p.12 (*Black-Watkins*). In his motion for turnover in *Sydmark*, the Trustee moved for an order to turn over $5,365 of the tax refunds, which is the result of subtracting the $755 balance due under the "flat fee" agreement from the total refunds of $6,120, apparently forgetting that Debtor is entitled to the post-petition portion of the refund. *See* Doc. 27, Case 06-41218 (*Sydmark*). In his *Sydmark* brief (Doc. 60), however, he instead seeks turnover of $5,508, or $4,753 if deduction of the $755 balance is permitted. The basis for these varying positions is not stated. Nevertheless, the Court understands that at a minimum, the Trustee does not oppose the deduction in either case of the balance due under the "flat fee"

15

## C. The Assignments did not Divest the Estates of their Interests in the Refunds

The first issue this Court must decide is whether the mere assignments of the tax refunds divested the estates of their interests in those refunds (disregarding for the moment the effect of the perfection of the security interests therein). This Court is bound by *Wagers*, which unequivocally answered this question in the negative. Here, as in *Wagers*, Debtors made pre-petition assignments of tax refunds they anticipated they would receive post-petition, but which would be attributable to the tax year in which their petitions were filed. The *Wagers* Bankruptcy Court construed such an assignment as absolute and not for purposes of security, but both the BAP and the Tenth Circuit held otherwise, finding the assignment was for security because the fees were not earned until the services were rendered.[41] Because debtors retained a property interest in those refunds until the services were performed, the refunds remained property of the estate. Debtors admit that the assignments in these cases were also for security.

The Court therefore follows *Wagers* and holds the estates' interest in the tax refunds were not eliminated by the assignments.[42] The Court rejects Debtors' arguments to the contrary and declines their invitation to reject *Wagers*. *Wagers* and *Lamie* are controlling precedent, and this Court must apply that law.

---

agreement before applying the *Barowsky* formula.

[41]The *Wagers* appellate courts, again, relied on *Matter of Scimeca*, 265 Kan. at 760, 962 P.2d at 1092, which held that "[a]bsent clear language that the retainer is paid solely to commit the attorney to represent the client and not as a fee to be earned by future services, it is refundable.").

[42]*Cf., Nichols v. Birdsell*, 491 F.3d 987, 988-989 (9th Cir. 2007) (holding debtors are not allowed to make pre-bankruptcy application of their tax overpayment to the subsequent year's tax obligation because overpayment was property of their bankruptcy estate. The right to receive a tax refund constitutes an interest in property. The election to waive the carryback and relinquish the right to a refund necessarily implicates a property interest, even if debtor's interest is not immediately capable of being liquidated into cash. Instead, § 541(c)(1) provides that a debtor's interests become property of the estate even in circumstances in which the interest cannot be liquidated and transferred by the debtor).

16

**D.  The Fact that Debtors' Counsel Filed UCC-1s to perfect Interest in Tax Refunds does not change result mandated by *Wagers* regarding post-petition services that provide no benefit to estate or its administration.**

These cases do present one important factual distinction from *Wagers*.  In *Wagers*, the security assignment was unperfected at the time of filing.  In these cases, the assignments were intended as security agreements and UCC-1's were in fact filed prior to the bankruptcy filings.  This Court must therefore take the analysis in these cases one step further, and ask whether the Tenth Circuit would find that the fact counsel had properly perfected his interest in the assignments in a tax refund would change the result.

The Trustee does not dispute that Debtors' counsel properly perfected his interest in Debtors' tax refunds under Kansas law.  Assuming that Debtors' counsel held perfected security interests in tax refunds on the dates of filing, the Court must still ask whether that fact distinguishes these cases from the *Wagers* decision that a debtor's attorney may not be paid from estate property for post-petition services that do not benefit the estate or its administration unless retained by the Trustee under § 327.  The Court finds it does not.

Again, *Wagers* held that the estate's portion of a tax refund generated from withholding or other credits during the tax year the bankruptcy petition is filed becomes property of the estate under § 541, notwithstanding debtor's pre-petition assignment of that refund.  *Wagers* also followed *Lamie* in holding that § 330 does not provide for payment of services performed post-petition, unless debtor's counsel is retained by the Chapter 7 Trustee to perform work that is of benefit to the estate or necessary for the administration of the estate.[43]

_____

[43]*See* 11 U.S.C. § 330(a)(4)(A)(i) and (ii).

17

As it turns out, this issue has been decided in this District in *In re Hodes*.[44]  Although *Hodes* is a pre-*Lamie* decision, and although the district judge held, contrary to the Supreme Court's ultimate holding, that omission of reference to "debtor's attorneys" in § 330(a)(1) was ambiguous and likely the result of a scrivener's error, *Lamie* did not change the remainder of the decision holding that a perfected security interest in funds does not divest the estate of its interest in those funds.

In *In re Hodes*, prior to an order for relief being filed, debtors had paid a non-bankruptcy attorney, who had previously represented them in connection with trust, probate and estate issues, a $10,000 retainer.  They also paid their future bankruptcy counsel a $51,000 pre-petition cash retainer (plus another $10,383 during the involuntary gap period).  All parties agreed that debtor's counsel had a proper retaining lien against those funds under K.S.A. § 7-108.

The trustee moved for counsel to disgorge those portions of the retainers used to pay for post-petition services, and the bankruptcy court ultimately held that § 330 was intended to provide a balance between administrative claimants, such as trustees, examiners, or other professional persons, and unsecured creditors---all of whom are competing for the same pool of unencumbered assets.[45]  The bankruptcy court reasoned that because the attorneys had valid liens on their retainers, thus encumbering those assets, they were not competing for the same pool of unencumbered assets as administrative claimants and unsecured creditors, and were thus not

---

[44]289 B.R. 5 (D. Kan. 2003) (holding that proper standard for analysis of debtor's counsel's use of counsel's perfected (by possession) prepetition retainer for postpetition work is under "benefit to estate standard" of § 330(a)(4)(A), not "excessive" standard under § 329).

[45]*In re Hodes*, 239 B.R. 239, 245 (Bankr. D. Kan. 1999).

covered by § 330.  The bankruptcy court thus limited its review of counsel's post-petition fees[46] to whether they were excessive under § 329, finding that despite the fact that the credit balances remaining in the retainers were property of the estates as of the date the orders for relief were entered in the two separate Hodes filings, the liens on the retainers superseded the interests of the estates and thus effectively removed them from the purview of § 330.

In reversing the bankruptcy court on this point, the District Court held that although there was no dispute that the attorneys had valid retaining liens on the retainers, those valid liens did not supersede the interests of the estates in those retainers on fees for services yet to be performed.  The court held that "...a debtor's attorney will not be precluded from asserting a lien on post-petition fees to be drawn out of a pre-petition retainer, so long as the fees meet the test of § 330."[47]  It also held that

> When a credit balance on a retainer becomes property of the estate, as it did in both cases here by the time the orders for relief were entered, any fees charged for services rendered after that time become subject to scrutiny under § 330.  Only after the bankruptcy court approves such fees under § 330 are they actually "earned."  When the fees are earned, the liens then operate to place the debtor's attorney's interest in those assets above those of competing creditors or administrative claimants.[48]

The court concluded by holding that "... the majority of fees charged for services rendered after the entry of the orders for relief were not actually earned because the bankruptcy court never approved such fees under § 330.  Accordingly, the liens on the retainers did not operate to place

---

[46]Judge Robinson had also held in her pre-*Lamie* decision that debtor's counsel could be paid for post-petition work under § 330, also finding a scrivener's error in omitting the words "or to the debtor's attorney" in the text of that statute when it was amended by the Bankruptcy Reform Act of 1994.  *In re Hodes*, 239 B.R. at 245, n.25.

[47]*In re Hodes*, 289 B.R. at 17.

[48]*Id.*

[the attorneys'] interests in those assets above those of other creditors and administrative claimants." [49]  The District Court then remanded to the bankruptcy court the task of determining which, if any, of the post-petition services rendered qualified under the § 330 "benefit of estate" and "necessary for administration of the case" standards.

Fast-forwarding to this post-*Lamie* era where we now know a debtor's counsel may not be paid for post-petition services that don't benefit the estate or its administration from estate assets unless retained under § 327, but extrapolating the still valid part of the *Hodes* decision holding that a validly perfected attorney's lien does not supersede the interests of the bankruptcy estate in retainers held for services to be performed post-petition, this Court agrees with *Hodes* in finding that even if  Debtors' counsel in these cases has a validly perfected security interest in the tax refunds, that interest does not supersede the estate's interest in those tax refunds for post-petition services. [50]  A pre-petition retainer, or as in this case, an assignment of tax refunds, is taken by a debtor's lawyer to secure future payment of fees to be awarded by the court.  This Court cannot award payment of fees to Debtors' counsel in these cases for work done after the filing of each bankruptcy petition, [51] pursuant to the teachings of both *Wagers* and *Lamie,*

---

[49]*Id.  Cf. Snyder v. DeWoskin (In re Mahendra)*, 131 F.3d 750, 756 (8th Cir. 1997) (holding that attorney's only avenue for post-petition compensation would have been to seek such compensation pursuant to § 330 as an administrative expense, and that debtor lost right to authorize attorney's legal services that could potentially encumber an asset of the estate upon filing bankruptcy).  The Chapter 7 trustee is the representative of the bankruptcy estate, and the Code, therefore, authorizes the trustee, under § 323(a), to employ attorneys, pursuant to § 327(a), who do not have a conflict of interest, to assist him in that capacity, and to pay them for their services.

[50]*Cf. In re Zukoski*, 237 B.R. 194 (Bankr. M.D. Fla. 1998) (holding that a debtor's attorney holds a possessory perfected security interest in a pre-petition retainer only to the extent services are provided <u>and approved</u> by the court).

[51]Again, the Trustee does not contest the payment of all the "flat fee" services out of the estate's portion of the refund, even though they contain some *de minimis* services actually performed post-petition, likely because they were done to "ensure that the filing is in order"–in other words, because the Trustee

20

because, as the parties have stipulated, Debtors' counsel was never appointed by the Trustee to perform work on behalf of the estate, and the work he did for both Debtors neither benefitted the estates nor was necessary to their administration.

In addition to agreeing with the District Court's analysis of this issue in *In re Hodes*, the Court also finds persuasive two recent cases finding that application of state lien laws cannot be used to circumvent the provisions of § 330. In *In re Hill*,[52] the Trustee sought turnover of approximately one-half of a $5,000 retainer taken and held by debtor's counsel, after first deducting all fees related to pre-petition services. The attorney argued that he could look to his possessory lien in the rest of the retainer, which lien he held under state law, for payment of his post-petition fees, which were still being incurred as a result of the trustee's demand.

The bankruptcy court disagreed, and held that

> The "retainer exception" set forth in *Lamie* is limited to flat fee retainers and does not extend to retainers intended solely to secure payment of post filing attorney fees. Interpreting state lien law to allow payments that are specifically prohibited by the Bankruptcy Code violates the Supremacy Clause.[53]

Similarly, in *Morse v. Ropes & Gray, LLP, (In re CK Liquidation Corp.)*,[54] the bankruptcy court held that because the retainer at issue was encumbered by a state law property lien, it was not affected by the conversion to a Chapter 7 liquidation, and debtor's counsel who had been

---

realizes some limited post-petition work benefits the estate or its administration. This position effectuates the assumed purpose of the retainer exception articulated by the Supreme Court in *Lamie v. U.S. Trustee*.

[52] 355 B.R. 260 (Bankr. D. Or. 2006).

[53] *Id.* at 268.

[54] 343 B.R. at 384.

21

authorized to represent the debtor in the prior Chapter 11 proceeding could continue to use the retainer in which he held a state-law property lien.

The District Court, on appeal, disagreed, holding that

> Where the Supreme Court has interpreted § 330(a)(1) as preventing payment from the debtor's estate to counsel not appointed under § 327, authorization of such payment on the basis of state law is forbidden by the Supremacy Clause.[55]

The Court agrees that when a specific bankruptcy statute has been interpreted by the United States Supreme Court to prevent payment from the bankruptcy estate of debtor's counsel's post-petition attorney fee services, unless that counsel is retained by the Trustee to perform services that the Trustee deems are likely to benefit the estate or are necessary to the estate's administration, state lien law cannot override that statute.

This analysis makes sense as a matter of law, and also as a matter of policy. The facts of these two case provide good examples. The fee contract in *Black-Watkins* provides for the assigned tax refund to cover counsel's attorney fees incurred in "contested matters, motions to compel or other delays caused by the debtor, dischargeability actions, judicial lien avoidances, stay relief actions, and any potential adversary proceedings."[56] Accordingly, if a debtor refused to turn over non-exempt property after a proper demand, and required the Chapter 7 trustee to litigate that matter, debtor's attorney could use that tax refund to defray debtor's legal expenses in defending the legally unjustified refusal. In fact, the attorney fees incurred by Debtors to

---

[55]*Id.* at 384. *But see In re Channel Master Holdings, Inc.*, 309 B.R. 855, 859 n.3 (Bankr. D. Del. 2004) (allowing an attorney to apply a pre-petition retainer to payment of his post-conversion attorney fees noting that "[a]lthough the Supreme Court has held that, after conversion to chapter 7, debtor's counsel fees may not be paid from the estate, it did acknowledge that those fees may be paid from a retainer received prior to conversion.").

[56]Case 05-42539 at Doc. 116, Ex.1 (*Black-Watkins*).

contest this turnover proceeding would be payable from estate funds were their positions in this case upheld.

Similarly, if a trustee sought turnover of a tax return and the debtor simply refused to cooperate, resulting in the issuance of a show cause order or even a bench warrant, all of which would require work by any counsel retained by the trustee, this contract would allow the debtor to essentially be rewarded for her willful failure to turn over the return by not having to use her own funds to fight with the trustee. Instead, she would in effect be allowed to spend the estate's portion of her tax refund to fight that issue. Such a scenario makes the Supreme Court's interpretation in *Lamie* of the amendment to § 330, that debtor's counsel cannot be paid from estate funds unless retained by the trustee to perform work that would benefit the estate or its administration, appear ultimately reasonable.

Similarly, in *Sydmark*, the contract calls for estate property (the estate's portion of the tax refund) to be used to litigate what are inherently post-petition dischargeability issues. Here, a credit card company brought such a dischargeability complaint, alleging that Debtor had made false representations that she would repay $11,164 in purchases (which even exceeded her $11,000 credit limit), all of which were incurred within the two months prior to filing her bankruptcy, in violation of § 523(a)(2)(A), and at a time when her current expenses exceeded her income by $400 a month, even without these charges. Debtor later confessed to a non-dischargeable judgment for $5,000.[57]

Like defending a debtor who wrongfully decided to disobey a valid request for turnover of non-exempt property, in the hypothetical previously outlined, this Court is hard-pressed to

---

[57]Adversary Proceeding 07-7014 at Doc. 17.

23

understand how defending either of these Debtors under these scenarios advances the bankruptcy system. These examples explain why Congress required the Trustee to decide which professionals to hire, instead of allowing a debtor's counsel to make that decision and then potentially waste limited estate assets performing services that benefit no one but the debtor. Debtors' attorney has stipulated he was not retained under § 327 to perform post-petition work on behalf of the estate, and the Court finds that even if he held a perfected security interest in the tax refunds under Kansas law, this state law lien does not change the result mandated by federal bankruptcy law.

### E. Trustee's Motion to Reject Executory Contracts is Moot

The Court next addresses the Trustee's motion pursuant to § 365 to reject the executory fee agreements for post-petition services at an hourly rate. In *Sydmark*, the Trustee alleges that the agreement should be rejected as detrimental to the estate and not in the interest of the estate because it "provides for continuing legal services," provides for "continuing obligations of the Debtor," and "purports to grant a security interest in non-exempt property of the estate." In support of rejection, the Trustee argues that rejection will prevent "an increasing secured claim." The Trustee's arguments in the motion to reject in *Black-Watkins* are similar.

The Court agrees with the Trustee that the attorney fee contracts are executory contracts for purposes of § 365. Although security agreements are not contracts or leases subject to rejection or assumption,[58] executory retention contracts between the debtor and counsel are

---

[58]3 *Collier on Bankruptcy* ¶ 365.02[1] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th Ed. rev. 2007).

subject to rejection.[59]  Debtors argue that the contracts are not subject to rejection because they constitute personal contracts within the meaning of § 365(c)(1)(A).  However, that subsection only bars assumption and assignment of contracts where applicable law excuses a party, other than the debtor, from accepting or rendering performance with an entity other than the debtor.  The personal nature of a contract does not bar rejection.[60]

The Court also agrees with the Trustee that since the contracts were not assumed by the Trustee, they were deemed rejected under § 365(d)(1).  However, such deemed rejection does not have the consequences envisioned by the Trustee.  Rejection of an executory contract does not terminate the contract.  Throughout the terms of § 365, rejection is linked with the debtor's decision not to assume a burdensome lease or executory contract, not to termination of the contract or lease.  One commentator explains this concept, as follows:

> . . . "rejection" is the decision of the trustee or the debtor, as the case may be, not to assume a burdensome contract or lease.  "Rejection" constitutes a "breach" pursuant to section 365(g), except to the extent that a contract or lease is "terminated" pursuant to section 365(h) or (I) [ relating to certain real property transactions].[61]

---

[59]*See Landsing Diversified Properties-II v. First Nat'l Bank and Trust Co. of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592 (10th Cir.1990) (pre-petition contingency fee agreement between debtor and attorney subject to rejection).

[60]Section 365 (c)(2) and (e)(2), also relied upon by Debtors, concern financial accommodations.  The attorney contracts are not for financial accommodations. The Court also rejects Debtors' request to resurrect dicta in the *Wagers* Bankruptcy Court decision as to the relevance of § 365.  That decision has been reversed.

[61]3 Collier on Bankruptcy ¶ 365.09[3]; see Michael T. Andrew, *Executory Contacts in Bankruptcy: Understanding 'Rejection,'* 59 U.  Colo.  L.  Rev.  845, 861(1988) (historically to assume a contract is to admit it to the estate; to reject a contract or lease is to leave matters as they are; rejection is the label for the decision not to assume).

For that reason, "[t]he decision to reject is thus correctly viewed only as 'power to breach' the executory contract or lease."[62]  The contract itself is not terminated.  "Rejection does not cause a contract magically to vanish.  The post-rejection rights and obligations of the debtor and the non-debtor are exactly the same as they would have been had the debtor first breached the contract and then filed for bankruptcy."[63]  The effect of the breach is determined by reference to state law.[64]

In these cases, under bankruptcy law, although the attorney contracts are deemed rejected, they have not been terminated.  The rejections constituted breaches as of the dates of filing.  Generally, however, one party to a contract may waive breach of the other party by either words or conduct.  The continued recognition of a contract as binding after the other party's alleged breach acts as a waiver of that breach.[65]  Here, counsel has declined to seek remedies for breach and has elected to perform, by providing post-petition legal services to each Debtor, pursuant to his agreements with them.  Similarly, Debtors have accepted the post-petition legal services, without attempting to terminate their contract with their counsel.  To the extent their fee agreements call for them to pay for post-petition work at an hourly rate, and those services have

_____

[62]*Eastover Bank for Savings v. Sowashee Venture (In re Austin Devel. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994).

[63]*Sir Speedy, Inc. v. Morse*, 256 B.R. 657, 659 (D. Mass. 2000).

[64]*In re Western Real Estate Fund, Inc.*, 922 F.2d at 595 (holding when attorney contingency contract is rejected in a Chapter 11 case, the source of allowable contract damages is state law).

[65]*In re Landmark Holding Co., Ltd.*, 286 B.R. 377, 383 (Bankr. D. Minn. 2002) (applying Minnesota law); *see Barker v. Kruckenberg*, 33 Kan. App.2d 545, 551, 105 P.3d 273, 277 (2005) (holding forfeiture not promptly asserted is waived).

26

been performed, Debtors' counsel may seek payment from Debtors for the reasonable work performed.[66]

Accordingly, for the foregoing reasons, the Trustee's motions to reject the fee agreements are moot.   Even though the contracts are deemed  rejected by the estate, such rejection has no impact on the issue of entitlement to the tax refunds.

### F.    The Refunds, after subtraction of the "flat fee" due, must be turned over to the Trustee

Because neither Debtors nor the Trustee have claimed that the *Barowsky* formula is incorrect under the facts of these cases, i.e., that the refund was generated from withholding or credits only coming in the post-petition period of the tax year, the Trustee is entitled to turnover of the estate's interest in tax refunds calculated using that formula.   Further, the Trustee has consented (at least in the *Black-Watkins* case) to allowing the balance of the "flat fee" owed by Debtors to be subtracted from the estate's portion of the refund, as a result of counsel's assignment and perfection of those refunds.[67]

---

[66]*In re Krause*, 349 B.R. 272, 285 (Bankr. D. Kan. 2006) (holding that this determination obviously does not preclude debtor from paying his attorney with post-petition earnings or with other sources of funds, as many of this Court's chapter 7 debtors do who find themselves the subject of an adversary proceeding).

[67]Even without the Trustee's agreement to this outcome, this appears to be the legally correct result. *Cf. Fiegen Law Firm, P.C. v. Fokkena (In re On-Line Services Ltd.)*, 324 B.R. 342, 346-47 (8th Cir. BAP 2005), *citing* Norton Bankruptcy Law and Practice 2d § 25:9 (Thompson/West 2006) and holding that a security retainer involves the attorney holding the client's money as a pledge—a possessory security interest—and the Uniform Commercial Code expressly allows for a possessory security interest in money. The BAP further held that once a bankruptcy case is filed, the amount of fees to be paid for pre-petition services is subject to review by the court.  Nevertheless, once determined, such fees are payable out of the funds in which attorney held a security interest as of the petition date.  "By taking a retainer-even though it is considered a security retainer-a professional becomes a secured creditor, and hence has a claim on the retained funds prior to any other administrative claimant," and thus pre-petition fees and expenses were payable out of the retainer.  The BAP also held that debtor's attorney was not entitled to payment of its post-petition fees and expenses from the unapplied portion of the security retainer, or from other assets of the estate, because the Code does not authorize compensation awards to debtors' attorneys from estate funds, unless such attorneys have been employed by the trustee with approval of the court under § 330.

27

In *Sydmark*, as stated above, the estate's prorata share of the tax refunds is 86.6%, or 5,299.22 ($6,120 total refund x 86.6%). The Trustee allowed Debtor's counsel to deduct the balance due under the flat fee agreement ($755) from the estate's share. Debtor's counsel should thus now turn over to the Trustee the difference, or $4,544.92, from the money held by him.

In *Black-Watkins*, the Trustee claims the estate's portion of the relevant refunds is $3,743. If one subtracts the balance due from the flat fee agreement ($1,232 minus 500 down payment = $732) from the $1,400 that her counsel is holding from the entire refunds she received ($6,182), the dividend is $668.00 ($1,400 minus $732). Debtor's counsel is ordered to turn $668.00 of the $1,400 he is holding over to the estate, and Black-Watkins is ordered to promptly turn over the difference, or $2,343 ($3,743 minus $732 = 3011, minus $668 = $2,343).[68]

### G. Turnover of bank account balances as of date of filing

In addition to the tax refunds, Trustee also seeks turnover of $754.28 contained in Debtor Sydmark's bank accounts on the date of filing.[69] Debtor does not contest that she did, in fact, have $754.28 in her bank accounts on the date of filing. Instead, she argues that the money was in the account only because a check she had written pre-petition had not been promptly cleared.[70] At the time of her initial response to the Trustee's turnover motion, she indicated she would

---

[68]This is the amount the Trustee's brief asserted was due, based on a 60.548% pro-rata calculation, and Debtor's counsel has not disputed that amount. The Trustee stipulated that he "would not oppose an order, consistent with local practice, that the net amount - $3,011.00 be turned over and that Debtor's attorney be allowed to retain $732.00 of the funds in his trust account and remit the remainder to the Trustee." Case 05-42539 at Doc. 119 (*Black-Watkins*).

[69]Case 06-41218-7 at Doc. 27 (*Sydmark*).

[70]*Id*. at Doc. 38.

Case 06-41218    Doc# 62    Filed 06/20/08    Page 28 of 31

provide case law support for her position, but no brief in support of that position has ever been filed.

The Trustee did ultimately brief this issue, and although Debtor could have filed a reply brief pursuant to the timetable set forth in the Scheduling Order,[71] explaining why the Trustee's analysis was in error, she elected not to. Accordingly, Debtor has essentially waived the argument.

Notwithstanding the waiver, this Court has recently decided this issue on the merits in *In re Schoonover*,[72] holding that because debtors had control over the funds at the time of the bankruptcy because the payor bank had not authorized any final payment on the check(s) debtors had sent by mail, debtors would be responsible for reimbursing the estate for those funds. Accordingly, account balances in existence on the date of filing are property of the estate that must be turned over to the trustee, even though there are outstanding checks against the account.[73] Debtor Sydmark must turn over the account balance of $754.28.

Finally, in his original motion for turnover in *Black-Watkins*,[74] the Trustee sought additional property. Because the Trustee has not pursued turnover of those items in his brief,[75] the Court assumes either agreement has been reached in this regard, or that the Trustee has

---

[71]*Id.* at Doc. 55.

[72]Case 05-43662 (Bankr. D. Kan., October 30, 2006) (Doc. 44).

[73]*Cf., In re Spencer*, 362 B.R. 489 (Bankr. D. Kan. 2006).

[74]Case 05-42539 at Doc. 28 (*Black-Watkins*).

[75]*Id.* at Doc.119.

29

waived the right to pursue that additional property.  Accordingly, the Court denies turnover of additional property from Black-Watkins, as moot.

## III.  CONCLUSION

For the reasons stated above, the Court holds: 1) The assignments of tax refunds did not divest the estates of their interests in the tax refunds; 2) that even if Debtors' counsel had perfected security interests in the estate's interest in the identifiable cash proceeds of Debtors' right to tax refunds, such perfection does not change the ultimate holding of both *Lamie* and *Wagers* that a debtor's counsel cannot be paid for post-petition services that do not benefit the estate or its administration from estate property unless retained by the Trustee under § 327, and Debtors' counsel was not so retained; 3) that the Trustee's motions to reject the fee agreements are moot; 4) that Sydmark's counsel must turn over $4,544.92 to the estate from the funds he is holding; 5) that Black-Watkins' counsel must turn over $668 of the money he holds for Debtor, and Black-Watkins must herself turn over the balance due, or $2,343; and 6) that Debtor Sydmark is required to turn over $754.28 to the estate, representing the amount contained in her bank accounts on the date of filing.  The funds ordered to be turned over to the Trustee shall be turned over within twenty (20) days of the date of this decision.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which  make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.  A judgment based upon this ruling will be entered on a separate document filed in the respective cases, as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

30

###

31